The appellate court of Illinois is reconvened. Thank you. You may be seated. Our next case today is case number 417-0328, In Re, the Marriage of Serapin. And for the appellant we have Ms. McGrath, is that correct? Yes. Oh, the appellant's over here. Okay. And for the apple leaf, Ms. Skinner. You may proceed, counsel. Thank you, Your Honor. Good morning, Your Honors. May it please the court and counsel. Your Honors, if this case is affirmed by the appellate court, the bar for allowing relocation of children will be set significantly lower than any appellate court has ever authorized a relocation. This is not a case, Your Honors, where Ms. Serapin was experiencing instability in her job, where Ms. Serapin wanted to move to a different state to be closer to family, where the cultural activities for the child would be greater. Nor is it a case, Your Honor, even recognized by the trial court, where the financial circumstances were going to be greatly improved. I recognize, Your Honors, that Judge Hill had a very difficult decision to make. She recognized that herself in her written ruling. She started out by indicating that this was a very close case, even when looking at all of the factors. It was a close case. Judge Hill then proceeded to find three of the 11 factors slightly in Ms. Serapin's favor. And I believe that that finding and conclusions and ruling was against the manifest way of the evidence. And I want to talk to the court about those three circumstances or factors, as well as the impact on this 12-year-old child. That factor being found by Judge Hill as being neutral, which I believe was, again, against the manifest way of the evidence. When we look to the circumstances and the reasons for relocation in this case, Ms. Serapin located a job online at State Farm in April, applied for the job in Dallas, Texas, and accepted the job a month later. It is the same job she is in while she resides in Bloomington. She is a security analyst in Bloomington. She will be a security analyst in Dallas, Texas. In fact, it became clear at trial that not only in Bloomington is she a security analyst, but within days after the hearing, she was going to receive a promotion to team lead in the security analyst area. Her salary in Bloomington, including her incentives, were $111,000. We don't know what the increase was going to be for her when she became the team lead. We know she was going to have an increase. What that increase was going to be, we don't know. Her salary in Dallas was going to be $106,500. Her financial circumstances as reflected and as the court was directed to in our Exhibit 23 were fine where she was. In fact, that exhibit would reflect almost $290,000 in 401k benefits, $70,000 in savings. So she wasn't moving because this was going to be a financial improvement. Now, Judge Hill did in making her decision that that factor favored, slightly favored. Ms. Serapin reasoned that because of advancements, she may have better, will have better chances of advancements in Dallas, Texas. Your Honors, I submit this court and no other appellate court has allowed someone to move because they say, well, in my opinion, without anyone from State Farm saying, yes, you're going to advance in this stage of time or period of time, that that's a sufficient reason to allow removal. We don't know if she's going to advance. In fact, again, she had advanced in Bloomington from the time she became security analyst. She's now advanced to team lead. Ms. Serapin had done nothing to try to find a security analyst position that would keep her right where she was in Bloomington or somewhere else in Illinois. There were other security analyst positions in the state of Illinois, in Bloomington, working from Bloomington. So the circumstances and reasons for her decision to move and relocate, I believe a finding that that factor was favored, favored Ms. Serapin, was against the manifest way of the evidence. She was moving somewhere, moving the child somewhere where there were no family, arguably one friend that she had testified, Ms. Rogers, who had children, one friend in Texas. The circumstances also when we consider that Ms. Serapin testified, well, it would be difficult for me to work with my coworkers from State Farm when they're in Dallas and we're in Bloomington. Your Honors, we have thousands of people employed by State Farm in Bloomington, and if they are allowed to merely come into court and indicate, well, it would be better if I move because I'll be closer to my coworkers, even when there are positions available in Bloomington, is certainly going to open the floodgates to individuals locating, moving their children out of the state of Illinois, away from a parent who is extremely, extremely active. I would note that Ms. Serapin thought videoconferencing with her coworkers was too inconvenient. Yet, when we look at what Mr. Serapin and the child, the 12-year-old child, are now going to experience, that's what they're going to experience for significant periods of delay of personal contact, and I will get back to that. With regard to the second factor that Judge Hill found, again, was slightly in Ms. Serapin's favor, educational opportunities. Ms. Judge Hill relied upon testimony by Ms. Rogers, a friend of Ms. Serapin's, who did testify that her children were doing well in the schools in Texas. Ms. Rogers also could not say because her children did well in Chittick School, where this young child attended school. She couldn't say that her children would not have succeeded just as well had they stayed here and attended school here in Bloomington, Illinois. Especially, Your Honors, when Zoe was doing so well. She was a straight-A student. She excelled in classes and excelled in the extracurricular activities she participated in. The third factor that the court found was slightly in Ms. Serapin's favor, was whether or not Mr. Serapin's parenting time, the impairment to his parent-child relationship could be minimized. And the court concluded that that factor also was slightly in Ms. Serapin's favor, and I respectfully disagree and believe that that finding is against the great weight of the evidence. When you consider, and Judge Hill found that Mr. Serapin was a highly active parent. He participated in all of his parenting time, other than two Wednesdays he missed in a three- or four-year period, unintentionally. He attended parent-teacher conferences. He clearly was a super-active father. When you consider that with the child living in Bloomington, he saw that child at least every seven days. One week, he'd see her on Wednesday evenings. There would be a seven-day period where he wouldn't see her. He'd see her on the seventh day. The second week, he'd see that child every four days. And now, with the schedule in place, Zoe and Mr. Serapin will not see each other for three- or four-month periods of time. Three- or four-month periods of time, depending on if it's the year that he has Thanksgiving, that would be a three-month period. If it's the year he has December, that's going to be a four-month period with no personal contact. When Mr. Serapin testified about how close he was with this child, how he hugged her every time he saw her, asked her about her day, if we look at the photographs, which I'm sure the court has seen, pictures of all the things he does on a regular basis with this 12-year-old child. But I think most importantly, we have a 12-year-old child who's going to turn 13. A 13-year-old is not going to want to come back to Bloomington and spend all summer. A 13-year-old is not going to want to spend every Christmas with dad outside, away from the friends that she will develop over time in Texas. It's going to seriously impact the relationship between Mr. Serapin and Zoe. The impact on Zoe. Again, with all due respect to Judge Hill, and this is a difficult situation for any judge to be in, Judge Hill found or reasoned that if she believed Ms. Serapin, then everything would be positive, was positive for moving Zoe. And Judge Hill indicated that my client's concern about the impact on Zoe was that she would not see the extended family. That was not the extent of Mr. Serapin's testimony. The extent of Mr. Serapin's testimony was how he hugs her every time, how if it comes up to time when Ms. Serapin had her vacation time and he didn't at least get to see Zoe within a week, within seven days, he was really sad. He also indicated all the things, the activities they participated in, testified about the activities. And we do have here an extended family of 13 extended family members who saw Zoe two, three times a month at least, not including all of the holidays, not including one birthday celebration per month with extended family members. We have a grandmother and a grandfather. The grandmother partially raised this child until she was in first, second grade, dressed her every morning, took her to school. These are people who Zoe will now not see for three, four month stints and again for longer, perhaps for longer, unless Mr. Serapin is going to insist on the child coming. Your Honor, the court's ruling as to the factors that the court found were slightly in Ms. Serapin's favor were against the manifest weight of the evidence. I think this court, if this court allows this case to stand, I would ask that this ruling, it's your discretion of course, but become an opinion because at least in McLean County, Livingston County where I practice, we need guidance from the appellate court on what is going to be sufficient to allow a relocation. Because I contend, Your Honors, if this relocation is affirmed, we will have, I will have to tell my clients. If someone wants to move, if they find a different position, even if it's the same pay, et cetera, there's no reason for individuals to try to try these matters anymore. It will allow people to easily relocate their children and I don't believe that's the purpose of the relocation statute. Thank you, Your Honors. Thank you, Counsel. Ms. Skinner. May it please the Court, Counsel. The trial court's grant of relocation of the minor child Zoe to the state of Texas should be affirmed. The appellant, Tim Serapin, has the burden to show that the lower court's decision is contrary to the manifest weight of the evidence. He is unable to demonstrate this because relocation to Texas is in Zoe's best interests. The trial court order in this case was thoughtful and explicit. factors in ruling on the relocation petition. There are numerous reasons why relocation was in Zoe's best interests, but I will focus on two main reasons today. First is the improvement to Arlene's financial situation through increased income and opportunities for advancement that are available in Texas. And second is the enhanced educational opportunities Zoe will have available to her in Texas compared to Bloomington.  I'm the oldest member of the panel. Get your voice up, because that's a recording device rather than a microphone, so it doesn't enhance your voice. All right. Will do. Thank you. Based upon the parenting time schedule as ordered by the trial court, Tim will have essentially the same amount of parenting time following the move as he did when Zoe lived in Illinois. So Zoe will be able to have a better quality of life in Texas and still enjoy a good relationship with her father. First is a realistic improvement to Arlene's financial situation. Arlene discussed the opportunity for a security analyst position that became available at State Farm's Dallas location. She described that if she remained in Bloomington, she would not have an opportunity for additional promotions, as she is at the top level of her position in Illinois at State Farm. Based upon her knowledge of State Farm, she described that the direction of the company is headed towards new locations away from Bloomington, meaning that the new locations are where opportunities for management positions and other growth exist. As of the time of trial, Arlene was going to be a team leader. She described why she would not be able to be successful in that role when her team was in Texas and she was in Bloomington. She further explained why not being successful in that position would be detrimental to her reputation and further possibilities for advancement at State Farm. In addition to the career advancement opportunities that she described with the move to Texas, Arlene also experienced significant financial benefits from the move. Her base salary increased by approximately $7,000, and also her bonuses would then start at a higher level as they are tied to her base salary. Arlene described the numerous benefits she would directly receive as a result of the move. These included a lump sum relocation payment, which was equal to six weeks of her salary, and a non-promotional relocation payment, which is equal to 5% of her Texas salary at the time of relocation. She explained that overall her income would be enhanced and her expenses would be lower in Texas, which would better allow her to afford activities for Zoe in her varied areas of interest. Arlene's enhanced income would therefore be a direct benefit to Zoe. Arlene benefits both financially and in terms of opportunities for additional advancement from the move to Texas. Therefore, the trial court properly recognized that this factor weighed in favor of a grant of relocation. In addition to the improved financial situation, Zoe will also benefit from increased educational opportunities in Texas. At the time of trial, Zoe attended Chittix Junior High in the Unit 5 school district. Arlene testified about numerous issues with Unit 5, including the fact that the buses were consistently late and unreliable. In Texas, the Wiley School District was Arlene's top choice for Zoe to attend school. Arlene described that Zoe was an excellent student who would benefit from advanced courses and being challenged by her studies. At Unit 5, Zoe did not receive high school credit for any courses she took while in junior high. She would receive high school credit for such courses at the Wiley schools. Additionally, there are no pre-advanced placement courses offered at Unit 5, but there are such courses available at the Wiley schools. Arlene's witness, Jennifer Rogers, her children previously attended Unit 5 and currently attend schools in Texas, testified regarding the increased educational opportunities available for her children and also Zoe in Texas. I would submit that educational opportunities are important for all children, but perhaps especially for a gifted student like Ms. Clear, Zoe is. The evidence demonstrated that Zoe would benefit from the enhanced educational opportunities in Texas. That is why the trial court correctly recognized that this factor did weigh in favor of the relocation to Texas. Under the parenting time schedule that the trial court ordered, Tim will have essentially the same amount of parenting time with Zoe as he did when the child lived in Illinois. Naturally, there will be longer intervals of time between each instance of parenting time due to the distance, but Tim and Zoe will be able to maintain their relationship when they spend time together under the new schedule. Tim will be able to spend extended blocks of time with Zoe, rather than an abbreviated period every other weekend and for a few hours during the week. Zoe will also be able to maintain her relationship with Tim's family when she returns to Illinois for parenting time. For this reason, the trial court properly recognized that this factor, the reasonable allocation of parental responsibilities, also weighed in Arlene's favor. The trial court is in the best position to assess the party's personalities, temperaments, and capabilities, which means there is a strong presumption in favor of the trial court's finding in relocation cases. Here, the trial court did analyze all the statutory factors, and found that the move to Texas would be in Zoe's best interest. In Texas, Arlene and Zoe will enjoy a better standard of living, and Zoe will benefit from increased educational opportunities. These reasons, as well as the additional reasons stated in our brief, demonstrate that the move was, in fact, in Zoe's best interest. Therefore, the lower court's grant of relocation was not contrary to the manifest weight of the evidence, and the decision below should be affirmed. What grade is Zoe in, or was she in at the time of trial? At the time of trial, she was in 7th grade. She's going into 8th grade. So, right now, since school has started, she's in 8th grade at the junior high that you mentioned. Correct. I was just calculating whether or not her mother had explored what the high schools were like. She did. She toured the Wiley High School in Texas, and she talked to some of the administration there, and she actually took Zoe there as well, and they toured the facilities, and there were photos of the facilities, and she testified about the differences between there. You mentioned she expected that her expenses would be less in Dallas. Correct. How did she calculate that? I'm not talking about the relocation. Right. Those expenses would be deferred, but after that? No state income tax in Texas. Their property taxes are lower. Those are a couple of big things. Okay. Okay. Thank you. Thank you. Any rebuttal, Ms. McGrath? Yes, Ms. McGrath. In regards to the comparison of the high schools and looking at the high schools that the high school, that normal community high school that Zoe would attend here or in Bloomington, first of all, I would note that the parties' marital settlement agreement provided that the child could attend any school, and it was up to the mother to decide. So if there were any concerns about where Zoe would attend school, certainly we could even be looking at private schools, and that argument was raised. However, when looking to comparison of the two schools in Texas and normal community high school, they're comparable. Now, are there some differences here and there? Yes. In fact, normal community high school, the per student expenditure is higher. The student classes are lower. Now, in some areas, and it was somewhat difficult, quite frankly, to compare the Texas school report cards with the Illinois school report cards. They're not based on the exact same standardizations, but the schools were at worst comparable. We have a child who excelled in schools. So is there a somewhat higher, and now I'm making counsel's argument, but is there a somewhat higher percentage that shows up in the Texas school where the children are more prepared for college? I do think there was somewhat of a smaller percentage, I'm sorry, larger percentage, higher percentage prepared for college. We're not going to have that issue with Zoe. Zoe is a straight-A student. She would be well prepared going through normal community high school. With regard to personalities, I'm sure the court is aware, even Judge Hill was concerned about Ms. Serapin's motives in commenting. We, of course, didn't push that envelope to trial because we just wanted what was best for Zoe. Is there going to be some increase in Ms. Serapin's annual earnings? Counsel says seven, I say maybe six, but again, we don't know what her raise was when she became the team lead. I submit, Your Honors, that a $6,000, $7,000 a year increase, when again, we don't know with certainty that she wouldn't receive that in Bloomington, does not outweigh removing, relocating this child from a highly active parent with 13 extended family members. Thank you, Your Honor. Thank you, Counsel. We'll take this matter under advisement and be in recess until the next case.